# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,       :
                                :
            Plaintiffs,          :
                                :
        v.                       :
                                : Crim. No. 17-59-LPS-2
TARON WALKER,                    :
                                :
            Defendant.           :
                                :
                                :

## MEMORANDUM ORDER

Pending before the Court is Defendant Taron Walker's ("Defendant") Motion in Limine to Preclude Testimony of TFO Christopher Bumgarner Regarding Nike Documents (D.I. 68) and Defendant's Motion in Limine to Exclude DNA Evidence (D.I. 74). For the reasons stated below, **IT IS HEREBY ORDERED** that Defendant's Motion to Preclude Testimony (D.I. 68) is **DENIED** and Defendant's Motion to Exclude DNA Evidence (D.I. 74) is **GRANTED**.

1. With respect to the motion to preclude testimony regarding the Nike Documents, Defendant objects to TFO Christopher Bumgarner "opining that the boots seized from 411 Kent Street are the same boots as those worn by one of the two burglars or commenting on the significance of the sales figures contained in NIKE000001 and NIKE000002 as it relates to the boots seized from 411 Kent Street during direct examination." (D.I. 68 at 3) The government concedes that "it would be improper for TFO Bumgarner to opine or comment in such a way;" therefore, "the government does not intend for TFO Bumgarner to be doing either." (D.I. 73 at 2) Rather, "[t]he government merely intends for TFO Bumgarner to read the contents of the Nike Documents accurately for the jury." (*Id.*) Defendant responds that he "has no objection to TFO

Bumgarner simply reading the contents of the Nike documents to the jury provided, consistent with Fed. R. Evid. 106, he reads them in their entirety." (D.I. 75 at 1) Accordingly, Defendant's Motion to Preclude Testimony (D.I. 68) is **DENIED**.

2.  On April 30, 2018, the government filed a status report notifying the Court that the government seeks to admit certain DNA results at trial and that Defendant would file a motion to exclude that evidence. (D.I. 72) Previously, on April 26, at the pretrial conference, the government had alerted the Court and Defendant to the possibility that it would seek to introduce DNA evidence at trial. That same day, Defendant moved to exclude DNA evidence obtained by the government. (D.I. 74) The government opposed this motion on May 1 (D.I. 76) and Defendant filed a reply on May 2 (D.I. 77).

3.  The undisputed facts are as follows. Defendant was arrested on December 12, 2016 and has been in federal custody since July 18, 2017. Judge Sleet entered a Joint Protective Order on August 31, 2017. (D.I. 19) On December 13, 2017, Defendant's counsel wrote a letter to the government requesting "[c]opies of any examinations or tests of evidence." (D.I. 74-1 at 1) On February 23, 2018, Defendant's counsel filed a letter with the Court requesting a teleconference "in connection with scheduling a trial date." (D.I. 38) After a March 6 teleconference with Judge Sleet, during which the government stated the parties "need to look towards scheduling a trial," the case was transferred to the undersigned Judge on March 26. During an April 4 teleconference with the undersigned Judge, the government stated that its "understanding is that a pretrial resolution with regards to Mr. Walker is out of the question" and so "it makes sense to schedule a trial today." (March 26 Tr. at 3) Accordingly, the Court scheduled trial to begin on Monday, May 7, 2018. (*Id.* at 10) In the meantime, on April 6 the

2

Court entered a schedule for submission of motions in limine, jury instructions, verdict sheet, and voir dire, all of which were made due on April 16. (D.I. 46)

4. Defendant is accused of breaking into Capital Pawn and stealing 20 firearms, among other items. (D.I. 72 at 1) On December 20, 2016, Delaware law enforcement recovered items, including two of the stolen firearms and a ski mask, from the home of Defendant's blood relative, Rosscell Fuller. (*Id.*; April 26 Tr. at 27) Defendant's DNA samples were obtained at the time of his arrest in December 2016. (D.I. 72 at 1) At the April 26 pretrial conference, just 11 days before the scheduled trial, the government informed Defendant and the Court, for the first time, that it is having the ski mask obtained from Mr. Fuller's home tested for Walker's DNA. (April 26 Tr. at 26) Defendant requested that the Court exclude such DNA evidence as untimely. In the alternative, Defendant asked that the government also test for the presence of Mr. Fuller's DNA. (*See id.* at 28) The government did not object to this latter request. (*See id.* at 31) The Court declined to exclude the evidence at that point but without prejudice to Defendant later seeking to exclude it as untimely, if the government continued to intend to present the evidence at trial. (*See id.* at 32-33) As the Court stated:

> So I do want to make sure the government understands I'm not today ready to say it is too late, but that doesn't mean that I won't be persuaded on Monday or Tuesday or the first day of trial that it's been too late and that the defendant didn't have a full and fair opportunity to prepare a defense. I'm not going to prejudge that because the issue may never come before me.

(*Id.* at 33)

5. On Friday night, April 27, ATF's Forensic Science Laboratory (the "ATF Lab") contacted the government and provided a preliminary, verbal indication of the results of its DNA

3

analysis of Walker and Harrison's DNA. The preliminary results were that the ski mask contained DNA from "a mixture of at least three (3) individuals with one (1) major contributor," the major contributor being Walker. (D.I. 72 at 4) Mr. Fuller's DNA was not obtained until April 30, due to certain obstacles, so the verbal results for Mr. Fuller have not yet been obtained. (*Id.* at 4-5) The government anticipates that a final written report will be ready on Friday, May 4. (*Id.* at 4)

6. Federal Rule of Criminal Procedure 16 requires the government to provide Defendant with adequate and timely pretrial criminal discovery. *See generally* Fed. R. Crim. P. 16(a); *United States v. Maury*, 695 F.3d 227, 248 (3d Cir. 2012). If the government fails to comply with its Rule 16 obligations, "the court may . . . prohibit [it] from introducing the undisclosed evidence," or it may impose other sanctions. Fed. R. Crim. P. 16(d)(2)(C). "However, these sanctions are discretionary; Rule 16 does not require a district court to do anything." *United States v. Jones*, 503 Fed. App'x 174, 178 (3d Cir. 2012). "In determining a suitable and effective sanction, a court must weigh" three factors: (1) "the reasons for the government's delay and whether it acted intentionally or in bad faith;" (2) "the degree of prejudice, if any, suffered by the defendant;" and (3) "whether any less severe sanction will remedy the prejudice and the wrongdoing of the government." *United States v. Davis*, 244 F.3d 666, 670 (8th Cir. 2001) (internal quotation marks omitted).

7. The facts in this case are quite similar to those in *Davis*. In *Davis*, the government requested expedited DNA testing ten days before trial, which was three months after arrest; preliminary results were orally reported on the Thursday before a Monday trial; and the written report was provided the Friday before trial. *See id.* at 668. The government explained that

testing had not been done earlier because of the backlog of cases at the lab, but did not explain why it had not requested expedited testing. *See id.* at 669. Even while acknowledging that the DNA evidence was "critical" to the government's case and "very convincing" of guilt, the district court granted the motion to exclude and denied a one-week continuance, noting that "it had a firm duty to make sure the system worked fairly and that defendants had the right to fully confront and evaluate the evidence that will be used against them in a timely fashion." *Id.* The Eighth Circuit affirmed the district court's conclusion after analyzing the three factors noted above. *See id.* at 671-73.

8. As in *Davis*, so too here, the government has not provided any persuasive explanation for the delay. The government stated that the ATF Lab is "inundated with requests for DNA testing and analysis from across the country" and that the case agent was unsuccessful in obtaining approval for private testing, which would cost $15,000, when a trial had not yet been scheduled. (D.I. 72 at 2; D.I. 76 at 2) Once the Court scheduled trial, the government was able to obtain special authorization to have the ATF Lab run the tests. (D.I. 72 at 2) "The government [i]s in charge of the prosecution of the case, and the orderly procurement of evidence, particularly evidence as probative as DNA evidence can be, [i]s obviously important to the presentation of its case-in-chief." *Davis*, 244 F.3d at 671. The government did not inform either Judge Sleet, the undersigned Judge, or Defendant's counsel that it was seeking DNA testing, but rather informed all involved that it was ready for trial without having sought expedited DNA testing or a continuance. While the Court does not find that the government acted with bad faith, the Court concludes that the government has not provided a persuasive

reason for its 16-month delay in obtaining the DNA analysis.[1]

9. Second, as in *Davis*, Defendant is prejudiced, because the government seeks to produce the written DNA analysis "almost literally on the eve of trial, making it virtually impossible, absent a continuance, for [Defendant] to evaluate and confront the evidence against [him]." *Id.* "DNA evidence is scientific and highly technical in nature; it would [] require[] thorough investigation by defense counsel, including almost certainly retaining an expert witness or witnesses." *Id.* Defendant has expressed serious concerns if the evidence is permitted, including "limited cross-examination preparation time" and an inability to "retain his own expert to review the results or perform his own test on the mask." (D.I. 77 at 2) As in *Davis*, Defendant is further prejudiced by the government's failure to "advise the district court or defense counsel until [April 26] that DNA testing was in process," but rather "assured the district court at the scheduling meeting[s] on [March 6 and April 4] that the case was ready for trial." 244 F.3d at 671-72. As the Court writes, it is late in the day on Wednesday, May 2, with just two business days left before jury selection begins, and one to two more days (at best) are expected to pass before defense counsel is provided with the written report explaining the evidence the government seeks to rely on to convict Defendant next Monday. Allowing the government to do so would be unfairly prejudicial to Defendant. Accordingly, the Court concludes that Defendant would be substantially prejudiced if the DNA evidence were admitted at trial.

---

[1] The government has had the ski mask in its possession since December 2016 and has had Walker in its custody since July 2017. While the government understandably has to make sometimes difficult decisions about resource allocation and priorities, it is notable here that no external force deprived the government of the ability to conduct its desired DNA testing at some reasonable time in 2016, 2017, or even the first four months of 2018. It was the government's own decision to deny the request of the case agent.

10. Finally, Defendant's failure to request a continuance does not compel a different result. As in *Davis*, the Court will not "condone the government's last-minute production of the DNA evidence by allowing the evidence to be presented at trial and thereby forcing [Defendant] to seek a continuance." *Id.* at 672. "It may well be true that alternative sanctions are adequate and appropriate in most cases, but it is equally clear that they would be less effective than the preclusion sanction and that there are instances in which they would perpetuate rather than limit the prejudice to the [defense] and the harm to the adversary process." *Id.* at 673 (quoting *Taylor v. Illinois*, 484 U.S. 400, 413 (1988)). In *Davis*, the defendants had been incarcerated for three months at the time of the scheduled trial. Here, Defendant here has already been in custody for nearly 17 months. (D.I. 74 at 1) Understandably, he does not seek a continuance. While the Court recognizes that the DNA evidence is likely important to the government's case-in-chief, the Court concludes that a less severe sanction would not be appropriate.

11. As the government recognizes, the circumstances here give rise to the Court's discretion to admit late discovery at trial, exclude late discovery from trial, or grant a continuance. (*See* D.I. 76 at 4) (citing *United States v. Lee*, 573 F.3d 155, 161 (3d Cir. 2009)) For all the reasons given, the Court has determined that the most reasonable and appropriate exercise of its discretion is to exclude the DNA evidence from trial.

May 2, 2018
Wilmington, Delaware

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT COURT